**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDITH CARTER, | |
| Plaintiff, | |
| v. | Civil Action No. 11-01584 (BAH) |
| | Judge Beryl A. Howell |
| BANK OF AMERICA, N.A., *et al.*, | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

The plaintiff, Judith Carter, brought this lawsuit in the D.C. Superior Court against Bank of America, N.A. ("Bank of America" or "BOA"), Freedom Mortgage Corporation ("Freedom Mortgage"), the Mortgage Electronic Registration Systems, Inc. ("MERS"), and the attorney for Bank of America (identified as John Doe) (collectively, "the defendants") [1], alleging multiple grievances related to a 2004 mortgage refinancing, the subsequent denial of the plaintiff's application for a loan modification, and alleged foreclosure proceedings on the plaintiff's home. Specifically, the plaintiff's Amended Complaint ("Am. Compl."), ECF No. 17, includes twenty-one causes of action, including, *inter alia*, for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(b)(2)(A), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as for

---

[1] The plaintiff's original Complaint also named as defendants Bierman, Geesing, Ward & Wood, LLC and Bank of America Home Loan Servicing, L.P., Bank of America, N.A. *See* ECF No. 1-1, at 4. Both of those parties were subsequently terminated as of October 14, 2011, when the plaintiff filed her Amended Complaint, which is the operative complaint in this action, naming as defendants Bank of America, MERS, and Freedom Mortgage. *See* Am. Compl., ECF No. 17. Neither the Complaint nor the Amended Complaint names the attorney for Bank of America (or John Doe) in the case caption. The Amended Complaint states, however, that, "Defendant, John Doe, attorney for Bank of America, is being sued for conversion, aiding and abetting, conspiracy, joint venture, and are [sic] further believed to be acting at the request of one or more of the Defendants in foreclosing on the Subject Property . . . ." and also states that "Defendant Attorney is being sued for attorney malpractice." *Id.* ¶¶ 9-10.

common law fraud, gross negligence, unfair and deceptive business practices, unconscionability,

unjust enrichment, predatory lending, and wrongful foreclosure.

Pending before the Court are motions to dismiss from defendant Freedom Mortgage, ECF

No. 18, and defendants Bank of America and MERS, ECF No. 20.  For the reasons explained

below, the Court will grant both motions to dismiss.

## I.    BACKGROUND

### A.    FACTUAL ALLEGATIONS

The plaintiff's 56-page Amended Complaint, with 316 numbered paragraphs, is

purportedly focused on an action "[arising] out of Defendants' fraudulent sale of a mortgage to

Plaintiff Judith Carter, the fraudulent foreclosure of that mortgage, [and] the fraudulent denial of

a [Home Affordable Modification Program (HAMP)] agreement."  Am. Compl. ¶ 1.  "The

essence of this lawsuit," the Amended Complaint explains, "is that the profit center of the

mortgage bond business for Bank of America drove the granting of this mortgage in violation of

state and federal law."  Id. ¶ 2.[2]  Unfortunately for the plaintiff, the Amended Complaint seems

to be more focused on providing a colorful narrative of the mortgage crisis[3] than articulating

plausible, or even comprehensible, factual allegations directly relevant to the plaintiff's claims.

---

[2] The plaintiff states the "essence" or the "crux" of the lawsuit differently in different parts of her pleadings, which makes it difficult to understand what exactly the plaintiff is alleging here.  The plaintiff states in her Opposition to the motions to dismiss, for example, that the "crux of Plaintiff's claim is that she was charged fees in excess of market rates, lured into a complex mortgage scheme that was likely to cause default and not provided with standard, and required, notices."  Plaintiff Judith Carter's Objection to Motions to Dismiss by Freedom Mortgage, Bank of America and MERS ("Pl's. Opp'n" or "Opposition"), ECF No. 26, at 3.  Later in the Opposition, the plaintiff states that the "exact claims against Defendants BANK OF AMERICA and MERS are that there was an offer and acceptance of a loan modification agreement that was violated by BANK OF AMERICA."  Id. at 10.

[3] The plaintiff's Amended Complaint, for example, compares securitization in the mortgage industry to the selling of shares of a Broadway show in the Mel Brooks movie 'The Producers.'"  Am. Compl. ¶¶ 24-25.  As the plaintiff explains, "[b]oth the banks and the characters in the Mel Brooks movie banked on the same belief: the underlying marketplace would not change.  In 'The Producers' the bet was that most Broadway shows fail.  In the mortgage industry, the bet was that demand for housing and mortgages would climb forever.  On the whole, the characters in a Mel Brooks movie were more realistic than the best and brightest in our banking industry."  Id. ¶ 24.

To the extent that the Court can decipher the factual allegations specifically relevant[4] to the plaintiff's claims from the rambling and internally inconsistent Amended Complaint, it views them in the light most favorable to the plaintiff, as it must at this stage of the proceedings.  *See Aktieselskabet AF 21. November 2001 v. Fame Jeans*, 525 F.3d 8, 15 (D.C. Cir. 2008) (quoting *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008)); *see also Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).

The plaintiff's claims arise from a 2004 home loan refinancing transaction for a property the plaintiff owned at 445 17th Street SE, Washington, D.C. 20003, the plaintiff's subsequent efforts to qualify for a loan modification, and foreclosure proceedings that may or not have been initiated on the plaintiff's property.  *Id.* ¶¶ 36-37, 43.

### 1.    Mortgage Issued to the Plaintiff

On August 16, 2004, the plaintiff closed on a $318,500[5] refinance mortgage for her home at 445 17th Street SE with Freedom Mortgage.  *Id.* ¶ 76; Mem. in Supp. of Defs. Bank of America and MERS Mot. to Dismiss Pl.'s Am. Compl., ECF No. 20 ("Defs. BOA & MERS' Mem."), Ex. A, at 1.  Out of this loan amount, it appears from the loan settlement statement that $228,466 was disbursed to pay in full an existing loan, while $80,042 appears to have been disbursed to the borrower.  *See* Defs. BOA & MERS' Mem., Ex. B.  The loan appears to have been a thirty-year loan with a fixed annual rate of 6%.[6]  Am. Compl. ¶ 38; *see also* Defs. BOA & MERS' Mem., Ex. A, at 1.  The plaintiff alleges that the thirty-year mortgage was "subject to no

---

[4] The plaintiff provides a plethora of factual allegations related generally to the mortgage industry but does not directly link most of the details to the defendants' handling of the plaintiff's situation in this case.  To the extent that the factual allegations are not specifically relevant to the plaintiff's claims, the Court does not elaborate on them.

[5] The plaintiff acknowledges that the Amended Complaint was incorrect in stating that the mortgage loan was $381,500.  Pl.'s Opp'n at 4; Am. Compl. ¶ 76.

[6] The Amended Complaint offers contradictory allegations regarding the interest rate of the mortgage.  While in one place, the Amended Complaint states that the loan had a fixed annual rate of 6%, the plaintiff also alleges that the defendants failed to disclose that the interest rate would adjust upwards.  *See* Am. Compl. ¶¶ 38, 96.

equity build up in the first ten years" and "had very little principle reduction in the first 15 years."  Am. Compl. ¶ 53.

The plaintiff makes a variety of allegations about the allegedly fraudulent manner in which the loan was issued.  First, the plaintiff states that the loan was awarded based solely upon credit scores and a "Stated Income," which was "a fiction created by the Lender's agent."  *Id.* ¶ 66.  Second, the plaintiff alleges that Freedom Mortgage conducted no independent income verification, nor was any effort made to determine the plaintiff's ability to repay the loan.  *Id.* ¶¶ 64, 69.[7]  Third, the plaintiff notes that she paid $8,758.75 in "discount points" to obtain the 6% rate, in addition to a $3,185 origination fee, both of which she says were "high by industry standards."  *Id.* ¶ 40.  Fourth, the plaintiff states that the loan had a "74.81% Debt-to-Income ratio, which is beyond underwriting standards and is a predatory loan."  *Id*. ¶ 42.  Fifth, the plaintiff states that, because of these fees, and the size and structure of the loan, the plaintiff lost equity in her home.  *Id.* ¶¶ 139, 253.  Sixth, the plaintiff alleges that she was "never notified about [a] higher rate to qualify.  The loan was approved based on the pre-sale of the loan, and the appraised value of the collateral, rather than the Plaintiff's ability to repay the loan."  *Id*. ¶ 51.  Finally, the plaintiff states that "[t]his loan was not approved in the Plaintiff's best interest."  *Id*. ¶ 39.  The plaintiff elaborates that she "should not have been approved on this type of loan product at 68.87% LTV.  It was a 'toxic' loan from its creation," *id*. ¶ 50, and was more than the plaintiff "could ever afford to repay."  *Id*. ¶ 52.[8]

---

[7] In a related point, the plaintiff states that "[i]f the Lender had used a more accurate and appropriate factor, such as the pertinent IRS Forms, and a more determinative level of scrutiny in determining the debt to income ratio, Plaintiff would not have qualified for the loan in the first place."  Am. Compl. ¶ 67.  The plaintiff neither cites to the "pertinent IRS Forms" in her Complaint nor explains what exactly they would show about the plaintiff's income.

[8] Some of these and other allegations in the Complaint are based on an "expert, certified, forensic audit of the Plaintiff's loan documents" that has "[revealed] legal violations which were incurred during the handling and processing of Plaintiff's loan."  Am. Compl. ¶ 93.  The "forensic audit" contains numerous inconsistencies and it is not at all clear to the Court that the audit is only referring to the plaintiff and her property.  As with the Amended

At some point between the issuance of the loan in 2004 and the filing of the instant lawsuit in 2011, the plaintiff went into default on the loan. *Id.* ¶ 99. Before the plaintiff went into default, however, loan servicing rights had been transferred from Freedom Mortgage to Bank of America. *Id.* ¶ 78.[9]

## 2. Plaintiff Denied Loan Modification

According to the plaintiff, she "applied for a loan modification and there was an offer and acceptance on it." *Id.* ¶ 43. The plaintiff alleges that she began making payments under this modification on March 26, 2010. *Id.* The plaintiff alleges that Bank of America representatives "assured [her] that she was enrolled in the HAMP program and would not have her home foreclosed on." *Id.* ¶ 44.[10] The plaintiff also states, however, that "Bank of America continued to send letters to [her] during this time threatening to foreclose on her home despite her enrollment in the HAMP program." *Id.* ¶ 45. At some point, the plaintiff alleges that she "was informed that her modification was postponed or cancelled." *Id.* ¶ 46.

The plaintiff believes that the loan modification was ultimately denied because defendant Bank of America "did not have possession of the note and/or could not locate the note." *Id.* ¶ 49.

---

Complaint, it appears that this may be a form "audit" and that details of the plaintiff's situation may have been inserted into the report, without a careful review of the form audit to delete references to other individuals' mortgages. *See, e.g.,* Pl.'s Opp'n, ECF No. 26-1 ("Mortgage Loan Forensic Audit," dated June 26, 2011), at 9 ("Borrower's mortgage loan was an Adjustable Mortgage Loan and was projected to increase from $ 3,114.31 per month to $. [sic] ADJUSTABLE MORTAGE LOANS THAT 'EXPLODE' (in this loan an increase of over 100%) are a basis for PREDATORY LENDING." *But see* Am Compl. ¶ 38 ("The loan was a 30 year fixed rate loan product at 6.00% interest rate for 360 months."). *See also* Mortgage Loan Forensic Audit, at 11 ( "Borrower's projected monthly mortgage payment with his [sic] other monthly liabilities was now over 50% of the Borrower's net earnings.").

[9] The plaintiff notes, however, that while "[s]ervicing rights are now with Bank of America Home Loans Servicing LP, . . . no proof of assignment or original documents have been tendered." Am. Compl. ¶ 78. The Court assumes that plaintiff means that servicing rights are now with Bank of America as defendant Bank of America stated in its Notice of Removal and its Motion to Dismiss the original Complaint that "[t]here is no such entity as 'Bank of America Home Loans Servicing, L.P.," which became part of Bank of America, N.A. as of July 1, 2011. *See* Notice of Removal, ECF No. 1, at 1 n.1; Defs. BOA and MERS Mot. to Dismiss Pl.'s Compl., ECF No. 14, at 1 n.1.

[10] It is unclear from the Amended Complaint how or when Bank of America informed the plaintiff that she was enrolled in the loan modification program.

Allegedly, defendant MERS "lost the underlying note to [the plaintiff's] mortgage," and due to this lack of documentation, Bank of America would have been legally unable to modify the loan terms. *Id.* ¶¶ 49, 148. Thus, the plaintiff claims that "the factors required to be considered for a loan modification were ignored to cover Bank of America's loss of possession of the note." *Id.* ¶ 49.

### 3.      Alleged Foreclosure of Plaintiff's Home

Since the plaintiff was in default, the plaintiff alleges that Bank of America initiated foreclosure proceedings on the plaintiff's property. *Id.* ¶ 47 (citing to "Exhibit A," which was not included with this filing).[11] The plaintiff alleges in her Amended Complaint that she received and relied on conflicting or false information from Bank of America, which prevented her from taking action to "save her home." *Id.* ¶¶ 135-37. Thus, the plaintiff claims to have subsequently "lost her property at foreclosure," *id.* ¶ 147, and to have been evicted due to the "non-judicial foreclosure sale," *id.* ¶¶ 117, 118.

By contrast, defendants Bank of America and MERS ask this Court to "take judicial notice of the fact that no document has been recorded with the District of Columbia Recorder of Deeds instituting foreclosure proceedings against the Property, which is a fact 'not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned.'" Defs. BOA & MERS' Mem. at 12 n.10 (citing FED. R. EVID. 201(b)).

---

[11] The defendants point to the plaintiff's citation of "Exhibit A" to show that plaintiff's counsel apparently used a form complaint in this case, in which she merely inserted some details relevant to the plaintiff. *See* Defs. BOA & MERS' Mem. at 2 n.2. In this case, it appears that the plaintiff forgot to remove the citation to Exhibit A from a form complaint, as there was no Exhibit A included with the Amended Complaint. There are also a number of other mistakes and internal inconsistencies in the Amended Complaint. *See, e.g.*, Am. Compl. at 48 (stating Nineteenth Cause of Action against First Home Mortgage, which is not a party to this case); *id.* ¶ 211 (stating that "Fannie Mae and Freddie Mac had a duty to adhere to its [sic] own underwriting standards[,]" although neither Fannie Mae nor Freddie Mac is a named defendant).

Indeed, in her opposition to the motions to dismiss, the plaintiff concedes that there has *not yet been a foreclosure* of the plaintiff's home. *See* Plaintiff Judith Carter Objection to Motions to Dismiss by Freedom Mortgage, Bank of America and MERS ("Pl.'s Opp'n"), ECF No. 26, at 9 ("This matter is ripe for adjudication.  JUDITH CARTER has a claim prior to the foreclosure on her home because of the non-judicial foreclosure law in the District of Columbia. She need not wait until for [sic] the physical loss of that home and her possessions to stop BANK OF AMERICA and MERS' conduct to protect her assets.").[12]

## B.    PROCEDURAL HISTORY

The plaintiff filed a 21-count Complaint in the Superior Court of the District of Columbia.  *See* Def.'s Notice of Removal, ECF No. 1, at 2.  Defendant Bank of America subsequently removed the case to this Court pursuant to 28 U.S.C. § 1441 because the Complaint stated four federal claims.[13]  *Id.* ¶¶ 17-19.

Once the case was in federal court, the defendants all moved to dismiss the plaintiff's Complaint.  The plaintiff subsequently filed an Amended Complaint.  ECF No. 17.

Defendant Freedom Mortgage then moved to dismiss the Amended Complaint on the grounds that all claims against it are time-barred by applicable statutes of limitations, or, in the alternative, that the plaintiff has failed to state a claim upon which relief may be granted under Rule 12(b)(6).  Def. Freedom Mortgage's Mem. in Supp. of Mot. to Dismiss Am. Compl., ECF

---

[12] It is troubling that the plaintiff would make this concession in her Opposition to the Motions to Dismiss and not seek leave to amend her Amended Complaint or otherwise explain why the Amended Complaint includes numerous assertions that the plaintiff's property has already been subject to foreclosure.  *See, e.g.*, Am. Compl. ¶ 43 ("Bank of America proceeded to foreclose on the property"); *id*. ¶ 47 ("Bank of America foreclosed on the Plaintiff's property"); *id*. ¶ 75 ("Plaintiff has lost her home"); *id*. ¶ 81 ("This agreement has been violated as a result of the foreclosure sale"); *id*. ¶ 107 ("Defendants did not have the right to initiate foreclosure proceedings on the Subject Property").

[13] The four federal claims forming the basis for the removal are causes of action under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and the Home Ownership and Equity Protection Act ("HOEPA").  *See* Def.'s Notice of Removal ¶ 6.

No. 19 ("Def. Freedom Mortgage's Mem."), at 2.  Defendants Bank of America and MERS

jointly moved to dismiss the Amended Complaint on the grounds that it fails to satisfy the Rule 8

pleading requirements and fails to state a claim upon which relief can be granted under Rule

12(b)(6).  Defs. BOA & MERS' Mem. at 2.  The two pending motions to dismiss are now ripe

for this Court's review.[14]

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff

need only plead "enough facts to state a claim to relief that is plausible on its face" and to

"nudge[ ] [his or her] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6).  "[A] complaint [does not,

however,] suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Instead, the

complaint must plead facts that are more than "merely consistent with" a defendant's liability;

"the plaintiff [must plead] factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Id.*; *Rudder v. Williams*, 666 F.3d 790,

---

[14] The plaintiff initially failed to respond to the defendants' motions to dismiss the Amended Complaint within fourteen days as required by Local Civil Rule 7(b), and was ordered by the Court to show cause why the defendants' motions to dismiss should not be granted as conceded.  *See* Minute Order, dated Dec. 12, 2011.  On December 18, 2011, the plaintiff, through counsel, submitted a response stating that "the attorney in the case is the one responsible for the violation of the rules of the Court."  *See* Pl.'s Mot. to Show Cause and Extend Time, ECF No. 22, at 1.  The Court noted, however, that this response "fail[ed] to provide any explanation for the failure to respond to the motions," and the plaintiff was ordered to submit an explanation for failure to comply by December 23, 2011.  Minute Order, dated Dec. 19, 2011.  The plaintiff was also given leave to re-file, in compliance with Local Civil Rule 7(m), a motion for extension of time.  *Id.*  The plaintiff did so, and was granted until January 3, 2012 to respond to the motions to dismiss.  *See* Pl.'s Motion to Show Cause and Extend Time, ECF No. 23; Minute Order, dated Dec. 23, 2011 (ordering plaintiff to respond by January 3, 2012).  On January 4, 2012, a day past the deadline set by the Court, the plaintiff filed her Opposition to the Motions to Dismiss, ECF No. 26.  Although the plaintiff's Opposition was untimely, the Court will excuse the one-day delay in the interest of deciding the matter on the merits.  The Court notes, though, that, although one of the explanations that the plaintiff gave for her failure to timely respond to the defendants' motions to dismiss was that "[r]ecent court cases and decisions directly impact the quickly-changing law in this matter, and need to be incorporated into any responses to a Motion to Dismiss[,]" Pl.'s Motion to Show Cause and Extend Time, ECF No. 23, the plaintiff's Opposition to the Motions to Dismiss does not cite any cases decided more recently than August 4, 2011, nearly a month before this case was removed to federal court.  *See generally* Pl.'s Opp'n, ECF No. 26.

794 (D.C. Cir. 2012).  The Court must "assume all the allegations in the complaint are true (even

if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences

derived from the facts alleged." *Aktieselskabet AF 21. November 2001*, 525 F.3d at 17 (internal

quotation marks and citations omitted).

## III.    DISCUSSION

As noted, there are two Motions to Dismiss before the Court.  In the first Motion to

Dismiss, Defendant Freedom Mortgage argues that the plaintiff's claims against it are all barred

by applicable statutes of limitations.  *See* Def. Freedom Mortgage's Mem. at 6-7.  Freedom

Mortgage argues that the plaintiff's claims against it accrued on August 16, 2004, the date the

mortgage agreement was signed, and that no applicable statute of limitations is longer than three

years.[15]  *Id.*  In addition, Freedom Mortgage argues that the plaintiff fails to state claims for

which relief can be granted.  *Id.* at 8.  In their Motion to Dismiss, defendants Bank of America

and MERS argue that plaintiff's claims fail to satisfy Rule 8 pleading requirements and fail to

state a claim upon which relief can be granted.  Defs. BOA & MERS' Mem. at 7.  They also

argue that all claims against MERS should be dismissed because "there is a complete absence of

specific factual allegations as to MERS."  *Id.* at 9.  For the reasons explained below, even giving

the plaintiff "the benefit of all reasonable inferences," *Aktieselskabet AF 21. November 2001*,

525 F.3d at 17, the Court finds that the plaintiff has not pled "enough facts to state a claim to

relief that is plausible on its face," *see Twombly*, 550 U.S. at 570.

Under the Federal Rules of Civil Procedure, a plaintiff must meet "a minimal pleading

standard to ensure that the adverse party is reasonably informed of the asserted causes of action

---

[15] Since the Court grants Defendant Freedom Mortgage's motion to dismiss on the grounds that the plaintiff has
failed to state a claim upon which relief can be granted, the Court need not consider Freedom Mortgage's statute of
limitations argument, which, in any case, could be difficult to evaluate given the lack of specificity provided in the
Amended Complaint.

such that he can file a responsive answer and prepare an adequate defense." *McCarter v. Bank of New York*, No. 11-2078, 2012 U.S. Dist. LEXIS 94059, at *5 (D.D.C. July 4, 2012) (citations omitted). "Plaintiff's [56]–page complaint, unfortunately, is an incoherent narrative containing numerous allegations that generalize and conclude as opposed to specify and support.  Indeed, most of the allegations are so overbroad and inconsistent with one another that defendants could not possibly exact what factual allegations underlie those claims, much less respond in any intelligible manner." *Id.* at *6.  The Court thus agrees with the defendants and finds that the plaintiff's Amended Complaint is so lacking in factual detail that it fails to state any claims upon which relief can be granted.[16]  The Court will address the plaintiff's claims seriatim below.

### A.      First Cause of Action: Declaratory Relief, Against All Defendants

In its first cause of action for declaratory relief against all defendants, the plaintiff alleges that "[a]n actual controversy exists between Plaintiff and Defendants regarding Plaintiff's rights and duties, in that Plaintiff contends that Defendants did not have the right to initiate foreclosure proceedings on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to this loan being a 'flip' and prohibited under federal and District of Columbia law."  Am. Compl. ¶ 105.  She also alleges that the loan was fraudulent.  *Id.* ¶ 108.  She seeks a finding by the Court that "the purported Power of Sale contained in the Loan is of no force and effect at this time, because Defendants

---

[16] The Court notes that the lawyer representing the plaintiff in this case also represented the plaintiff in *McCarter v. Bank of New York*, No. 11-2078, 2012 U.S. Dist. LEXIS 94059 (D.D.C. July 4, 2012).  Another district judge in this Circuit recently dismissed the complaint in that case, noting its severe deficiencies.  The Amended Complaint is nearly identical to the complaint that the plaintiff's counsel filed in *McCarter, see* No. 11-2078, ECF No. 1-2, a fact of which the Court may take judicial notice.  *Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011) (noting that a district court "may take judicial notice in ruling on a motion to dismiss").  The plaintiff's counsel, perhaps inadvertently, called attention to the similarity of these cases in her "Motion to Show Cause and Extend Time to Object to Motion to Dismiss or Otherwise Respond to Defendant's Motion to Dismiss."  *See* ECF No. 23.  There she posited as one explanation for her failure to file a timely opposition to the motions to dismiss "[t]he press of business . . ., in combination with two clients with very similar names having similar cases and filing deadlines."  *Id.* As the Judge in *McCarter* found, the inadequate Amended Complaint provides the Court no basis on which any relief can be granted.

[sic] actions in the processing, handling and attempted foreclosure of this loan has [sic] contained numerous violations of federal and District of Columbia laws designed to protect Borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants." *Id.* ¶ 110.

In response, defendant Freedom Mortgage argues that it has had no involvement in any alleged foreclosure because servicing rights on the mortgage were transferred to Bank of America, *see* Def. Freedom Mortgage's Mem. at 8, while defendants Bank of America and MERS argue that "Plaintiff alleged no facts in the Complaint which could lead to the conclusion that the Property was sold at a foreclosure sale," Defs. BOA & MERS' Mem. at 12.  In fact, Bank of America denies foreclosure proceedings have been initiated at all, stating that "BANA's records do not indicate that foreclosure proceedings have been instituted against the Property." *Id*. at 5 n.5.  As noted, the plaintiff, in her Opposition to the defendants' Motions to Dismiss, seems to agree that, in fact, no foreclosure has taken place.  *See* Pl.'s Opp'n at 9.

Thus, the Court finds that the plaintiff has failed to plead any facts that plausibly support this claim for declaratory relief against the defendants for initiating foreclosure proceedings.  As to Freedom Mortgage, the Court agrees that the plaintiff has not alleged any facts pointing to involvement by Freedom Mortgage with foreclosure proceedings.  As to Bank of America and MERS, the plaintiff has not provided any facts about when, how, or even whether foreclosure proceedings were initiated.  Moreover, the plaintiff provides no citation to any federal or District of Columbia statutes allegedly violated by the defendants.  To the extent that the claim is brought under District of Columbia foreclosure law, however, a cause of action accrues with the filing of a Notice of Foreclosure.  *See Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 322 (D.C. 2008).  Since the plaintiff has not pled facts sufficient to show either that she received a notice of

foreclosure or that a foreclosure took place without proper notice, plaintiff has failed to state a claim upon which relief can be granted.

### B.      Second Cause of Action: Injunctive Relief, Against All Defendants

In her second cause of action, in which she seeks injunctive relief against all defendants, the plaintiff alleges that the "wrongful conduct of Defendants, unless restrained and enjoined by an order of the Court, will cause great and irreparable harm to Plaintiff." Am. Compl. ¶ 119. The plaintiff references the defendants' alleged failure to "prove [the] status of [the] holder of the [Promissory Note]" and the defendants' alleged lack of standing to pursue a foreclosure. *Id.* ¶¶ 113, 116. Although the plaintiff does not specify the type of injunctive relief sought, the Court construes the Amended Complaint as seeking an injunction against the "non-judicial foreclosure sale" repeatedly referenced in the Amended Complaint. *See id.* ¶¶ 113, 115, 117.

In response, defendant Freedom Mortgage repeats its argument that it has had no involvement with any alleged foreclosure because it no longer services the loan. *See* Def. Freedom Mortgage's Mem. at 8. Defendants Bank of America and MERS argue that the plaintiff has failed to meet the standard for preliminary injunctions and that the "[p]laintiff's theory – that a lender must prove standing – is contrary to the District of Columbia's status as a non-judicial foreclosure jurisdiction." Defs. BOA & MERS' Mem. at 13-14 (citing D.C. CODE §§ 42-815 to -818.2).

The Court agrees with the defendants that the plaintiff has stated no plausible claim for injunctive relief. The Court agrees that the plaintiff has alleged no involvement by Freedom Mortgage in the foreclosure. The Court also agrees that the plaintiff has failed to state a claim against Bank of America. First, "[t]he District of Columbia is a non-judicial foreclosure jurisdiction, which allows foreclosure pursuant to a 'power of sale provision contained in any

deed of trust.'"  *Leake v. Prensky*, 798 F. Supp. 2d 254, 256 (D.D.C. 2011) (quoting D.C. CODE §

42-815).  In other words, in the District of Columbia, a party initiating foreclosure proceedings

need not prove standing in a court if the mortgage instrument includes provisions for foreclosing

on the property.  *See Diaby v. Bierman*, 795 F. Supp. 2d 108, 112-13 (D.D.C. 2011).  Second, the

plaintiff has not stated a claim because she has provided no details about any potential

foreclosure on the plaintiff's property nor described any harm that the plaintiff would suffer as a

result of a foreclosure.  Therefore, the plaintiff has not stated a claim against any of the

defendants under this cause of action upon which relief can be granted.

### C.     Third Cause of Action: Common Law Fraud, Against All Defendants

Turning to the third cause of action, the plaintiff alleges that "Bank of America misled

[her] as to how she could redeem her property from the foreclosure process, in fact giving advice

that was not only incorrect, but guaranteed to induce her from taking actions maintaining the

ownership of her home."  Am. Compl. ¶ 130.  The plaintiff alleges, for example, that Bank of

America gave her false information that induced her reliance on "HAMP processes or processes

internal to Bank of America for resolution of the foreclosure issue," *id.* ¶ 133, and that the

defendants "knew their representations and omissions were false and/or misleading . . . [and]

made the misleading statements with the intent to defraud Plaintiff," *id.* ¶ 141.

Defendant Freedom Mortgage again repeats its argument that it has had no involvement

with any alleged foreclosure because it no longer services the loan.  Def. Freedom Mortgage's

Mem. at 8.  It also argues that the plaintiff has failed to plead any of the elements of common law

fraud required for a fraud claim under District of Columbia law and has failed to comply with

Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake."  Def. Freedom

Mortgage's Mem. at 8-9 (citing FED. R. CIV. P. 9(b)). Defendants Bank of America and MERS make the same two arguments, that plaintiff has failed to plead the elements of common law fraud and failed to comply with Rule 9(b). Defs. BOA & MERS' Mem. at 15-16.

"Under D.C. law, '[t]he essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation.'" *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 275 (D.D.C. 2011) (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 n.22 (D.C. 2008)); *see also Howard Univ. v. Watkins,* No. 07-472, 2012 WL 1454487, at *6 (D.D.C. Apr. 27, 2012); *United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 52 (D.D.C. 2011). The Court agrees with the defendants that the plaintiff has failed to plead these elements. The Court also agrees that the plaintiff has not stated with any particularity the circumstances constituting fraud, as required by Rule 9(b), because she has not provided even approximate dates of when fraudulent statements were made to her nor the specific nature of the assurances. "Not only must fraud claims be pled with particularity, but the case law makes clear that the Court 'need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations.'" *McCarter*, 2012 U.S. Dist. LEXIS 94059, at *9 (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Thus, the plaintiff has failed to state a claim for fraud for which relief can be granted.

### D.      Fourth Cause of Action: Gross Negligence, Against All Defendants

The Court now turns to the plaintiff's claim of gross negligence against all defendants. With respect to defendant MERS, the plaintiff alleges that "MERS lost the underlying note to [her] mortgage," and that she "did not receive a loan modification because the underlying note

was lost." Am. Compl. ¶ 148. Additionally, she alleges that "MERS intentionally failed to

perform its duties to act in good faith and fair dealing" and that "MERS' intentional failure was

made with reckless disregard of Plaintiff's property." *Id.* ¶ 150.

With respect to defendant Bank of America, the plaintiff alleges that "Bank of America

had notice of MERS' sloppy and irresponsible practices and inability to find documents it had

been tasked with safekeeping, . . . ignored MERS' actions, . . . [and] proceeded to foreclose on

Plaintiff's property despite its knowledge that the underlying note could not be located." *Id.* ¶

149.

Defendant Freedom Mortgage argues that "[t]here are no allegations in Count Four that

relate to Loan origination," Def. Freedom Mortgage's Mem. at 9, while defendants Bank of

America and MERS argue that, because the relationship between the plaintiff and defendants

arises out of a contract, there can be no independent tort claim, Defs. BOA & MERS' Mem. at

17-18.

The Court agrees with the defendants. There are no allegations in the Amended

Complaint regarding origination of the loan in this claim, so it does not state a claim against

Freedom Mortgage.

Moreover, "[i]n the District of Columbia, as elsewhere, [t]o establish negligence a

plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by

the defendant, and damage to the interests of the plaintiff, proximately caused by the breach."

*Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (internal quotation

marks and citations omitted). However, "the tort must exist in its own right independent of the

contract, and any duty upon which the tort is based must flow from considerations other than the

contractual relationship. The tort must stand as a tort even if the contractual relationship did not

exist." *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 53-54 (D.D.C. 2010) (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008)).  The plaintiff has alleged no facts that could sustain a claim of negligence or gross negligence independently against any of the defendants if her contractual relationship with them did not exist. Accordingly, this claim must be dismissed.

> **E.     Fifth Cause of Action: Rescission of the Mortgage Loan, Against Bank of America**

The Court next examines the plaintiff's claim that she is entitled to a rescission of her loan.  She premises this argument on "all the foregoing reasons: Fraudulent Concealment, Unfair and Deceptive Acts and Practices (UDAP), and violating the Net Tangible Benefit statute in the District of Columbia, each of which [the plaintiff claims] provides independent grounds for relief."  Am. Compl. ¶ 153.

Defendants Bank of America and MERS argue that the "[p]laintiff has failed to plead a cause of action for fraud with [the] requisite specificity."  Defs. BOA & MERS' Mem. at 18. Bank of America and MERS also state that the "[p]laintiff does not identify or provide any citation to what she means by 'Net Tangible Benefit' statute.  BANA and MERS cannot possibly respond to this abstract claim, and this Court should also not try to divine what cause of action Plaintiff intends to plead."  *Id.* at 19.

As discussed *supra*, the Court agrees that the plaintiff has not pled a fraud claim with the specificity required.  The Court also agrees that, absent any citation to specific statutes, the meaning of this claim, either state or federal, simply cannot be ascertained.  Therefore, the plaintiff has not stated a claim for which relief may be granted.

**F.      Sixth Cause of Action: Unfair and Deceptive Business Practices, Against All Defendants**

Next, the plaintiff alleges that the defendants failed to use a diligent appraisal and loan underwriting process, *see* Am. Compl. ¶¶ 157, 163, failed to disclose the fact that the plaintiff should not have been approved for the loan she was given, *see id.* ¶ 159, and "used various rates and charges to disguise the actual payment schedule and loaned amount," *id.* ¶ 160.  As such, the plaintiff alleges that "Defendant has violated the Unfair and Deceptive Acts and Practices, Regulation AA, 12 C.F.R. pt. 227, by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of this home, equity, as well as their [sic] past and future investment."  *Id.* ¶ 165.

Defendant Freedom Mortgage argues that the plaintiff "has no standing to enforce compliance with Regulation AA," which is enforced by the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, or the Federal Deposit Insurance Corporation.  Def. Freedom Mortgage's Mem. at 9-10.  Moreover, Freedom Mortgage argues that, even if the plaintiff could raise this claim, Freedom Mortgage is not a federally regulated bank covered by the regulation.  *Id.* at 10.  Defendants Bank of America and MERS argue that the regulation in question does not apply to any of the alleged conduct in the Complaint, and that even if it did, there is no private right of action under Regulation AA.  Defs. BOA & MERS' Mem. at 19-20.

The Court agrees with the defendants.  First of all, the actions prohibited by this regulation do not appear to correlate to any of the activities alleged by the plaintiff.  The regulation is limited to unfair credit contract provisions, 12 C.F.R. § 227.13, unfair or deceptive practices involving consigners, 12 C.F.R. § 227.14, and unfair late charges, 12 C.F.R. § 227.15.  Moreover, the plaintiff may not bring a claim under these regulations as there is no private right

of action to enforce these regulations.  *See Tani v. President/CEO, Salomon Bros. Realty Corp./Citigroup*, No. CCB-03-2566, 2005 U.S. Dist. LEXIS 10825, at *14 n.5 (D. Md. May 31, 2005) ("[T]here is no indication that a private cause of action is created by 12 C.F.R § 227.14"); *Greer v. Harmon Stores, Inc.*, No. H-8-CV-3510, 2009 WL 7804572, at *1 (S.D. Tex. June 3, 2009) ("[T]here is no private right of action for enforcement of [§ 227.15].").

### G.      Seventh Cause of Action: Unconscionability, Against Bank of America

The Court now turns to the plaintiff's claim of unconscionability against Bank of America.  The plaintiff asks the Court to declare the loan agreement and security deed unconscionable because they were made with "deception, lack of any net tangible benefit to the Plaintiff, unfair bargaining position, [and] lack of adherence to the regulations, civil codes and federal standards that the Defendants were required to follow . . . ."  Am. Compl. ¶ 170.

In response, defendants Bank of America and MERS argue that unconscionability can only be used as a defensive argument against enforcement of a contract, and cannot properly be used by the plaintiff as an offensive tool.  Defs. BOA & MERS' Mem. at 21.

Indeed, Bank of America and MERS are correct that there is no common law cause of action for unconscionability, a doctrine which "'applies only defensively to preclude the enforcement of a contract, not as a sword that a party may use to rescind an unfavorable contract.'"  *Solomon v. Falcone*, 791 F. Supp. 2d 184, 191 (D.D.C. 2011) (quoting *Ali v. Mid–Atlantic Settlement Servs., Inc.*, 640 F. Supp. 2d 1, 11 n.9 (D.D.C. 2009).  The plaintiff may have intended to bring this claim under D.C. Code § 28-3904(r), which "declares it 'a violation of this chapter . . . for any person to . . . (r) make or enforce unconscionable terms or provision of sales or leases. . . .'"  *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 37 (D.D.C. 2006) (quoting D.C. CODE § 28-3904(r) (2001)).  Unfortunately, the plaintiff has baldly

asserted unconscionability without providing any factual allegations that would permit the Court

to draw such an inference.  Therefore, this count does not state a claim.

### H. Eighth Cause of Action: Quiet Title, Against All Defendants Claiming Any Interest in the Subject Property

The Court next examines the plaintiff's quiet title claims.  The plaintiff alleges that

"through the course of the transaction involved herein, Defendants have transferred physical

possession of the Security Deed and Promissory Note to multiple subsequent purchasers.

Plaintiff are [sic] informed and therefore believe and allege that Defendants, and each subsequent

purchaser, claim an interest in the Subject Property adverse to Plaintiff."  Am. Compl. ¶¶ 173-74.

The plaintiff therefore seeks a declaration from the Court that she alone has the title to the

property "and that the Defendants . . . be declared to have no estate, right, title or interest in the

Subject Property and that said Defendants, and each of them, be forever enjoined from asserting

any estate, right, title or interest in the Subject Property adverse to Plaintiff's."  *Id.* ¶ 175.

Defendant Freedom Mortgage argues that "there is no allegation that Freedom claims a

current interest in the Property."  Def. Freedom Mortgage's Mem. at 10.  Defendants Bank of

America and MERS argue that "Plaintiff has not asserted a competing claim to the title, or

alleged any cause of action for which quiet title would be a remedy."  Defs. BOA & MERS'

Mem. at 21.

The Court agrees with the defendants that the plaintiff has stated no claim for which

relief may be granted because the plaintiff has offered no facts to support the allegations that

there are competing claims to title of her property that would disturb her quiet enjoyment.  *See*

*Diaby*, 795 F. Supp. 2d at 111-12 (dismissing quiet title claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) when the plaintiff failed to "identify any *facts* alleged in his complaint that

could give rise to a right to relief") (emphasis in original).

I.       **Ninth Cause of Action: Failure to Comply with District of Columbia Statutes, Against All Defendants**

The Court next examines the plaintiff's general allegations that the defendants failed to properly comply with D.C. real property law.  The plaintiff alleges that the defendants have "failed to file the Security Instrument and all assignments on the subject property with the Recorder of Deeds in Washington, D.C., and thus have brought its foreclosure action without proper statutory compliance."  Am. Compl. ¶ 181.  The plaintiff also alleges that the defendants "have failed to comply with District of Columbia law governing foreclosures," *id.* ¶ 180, though without reference to which statutes and how the defendants have failed to comply, *see id.* ¶¶ 176-84.  The only specific allegations made by the plaintiff are that the defendants failed to "[p]rove status of holder of the instrument" or "[p]rove status of non-holder of the instrument who has the rights of a holder" or "[p]rove status of being entitled to enforce the instrument as a person not in possession of the instrument."  *See id.* ¶ 183.  The plaintiff further alleges that, by failing to prove their status as holders of the promissory note or non-holders entitled to enforce the note, *see id.* ¶ 183, the defendants are "attempting to enforce a claim without compliance with the Uniform Commercial Code," *id.* ¶ 184.  The plaintiff also alleges that, because the loan was made part of a "'derivative,' and/or a 'hedge fund,'" *id.* ¶ 177, "there could be thousands of investors claiming to 'Hold the Note,'" *id.* ¶ 178.

Defendant Freedom Mortgage argues that "Count Nine is based entirely on alleged violations of unspecified D.C. statutes arising out of a foreclosure that did not involve Freedom," Def. Freedom Mortgage's Mem. at 10, while defendants Bank of America and MERS argue that the "Ninth Cause of Action is based on alleged violations of unspecified D.C. statutes arising out of a foreclosure that did not occur[,]" but that even if a foreclosure had occurred, the plaintiff has

pled insufficient facts to support a claim of wrongful foreclosure, Defs. BOA & MERS' Mem. at 21-22.

The only specific violations alleged by the plaintiff concern the defendants' supposed failure to prove status as holder of the instrument or entitlement to enforce the instrument. *See* Am. Compl. ¶ 183. As discussed *supra*, however, in the District of Columbia, it is unnecessary to prove standing to foreclose, so these specific allegations do not support a claim of wrongful foreclosure. Furthermore, "[t]he District of Columbia courts have held that 'an action for wrongful or improper foreclosure may lie where the property owner sustains damages by reason of a foreclosure executed in a manner contrary to law.'" *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 101 (D.D.C. 2010) (quoting *Johnson v. Fairfax Vill. Condo. IV Unit Owners Ass'n,* 641 A.2d 495, 505 (D.C. 1994)). In this case, however, the plaintiff has not pled sufficient factual allegations to demonstrate either that she has sustained damages or that there was a foreclosure executed contrary to law. Therefore, as in *Jackson*, "[a] conclusory allegation that Defendants wrongfully foreclosed is totally inadequate to state a claim for wrongful foreclosure." *See id.*

J.     **Tenth Cause of Action: Conversion, Aiding and Abetting, Conspiracy, Joint Venture, Promissory Estoppel or Illegal Attempt to Convert and Fraudulent Misrepresentation, Against Bank of America**

Though this cause of action states a long list of misdeeds, the plaintiff's primary claim appears to be an allegation of fraudulent misrepresentation. *See, e.g.*, Am. Compl. ¶¶ 186-88, 197-98. Specifically, the plaintiff alleges that the defendants "knowingly and intentionally concealed material information from Plaintiff," such as relaxed underwriting standards, "[t]hat they . . . lost possession of the underlying Note," "[t]hat loss of possession of the underlying Note meant that a HAMP loan modification could not be done legally," and "[t]hat the purpose of granting the mortgage loan was to sell bonds[.]" *Id.* ¶ 186.

21

Defendants Bank of America and MERS argue that, as in Count Three, the plaintiff "fails to satisfy the requirement for asserting a claim of fraud or misrepresentation, as well as the Rule 9(b) pleading standards[,]" Defs. BOA & MERS' Mem. at 22, and that the claim "should be dismissed because she fails to allege, with specificity, what misrepresentations were made to her, by whom, when, and how she has been damaged thereby[,]" *id.* at 23.

The elements of fraudulent misrepresentation are essentially the same as those for common law fraud, namely "(1) a false representation or willful omission of a material fact; (2) knowledge of the falsity; (3) an intention to induce reliance; and (4) action taken in reliance on the representation." *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706 (D.C. 1981). The Court finds that the plaintiff has failed to plead any of the elements with the required specificity. Accordingly, this claim will be dismissed.

### K.    Eleventh Cause of Action: Unjust Enrichment, Against Bank of America

The plaintiff alleges that "[d]efendants, by engaging in fraudulent conduct have been unjustly enriched at Plaintiff's expense." Am. Compl. ¶ 202. She alleges further that the defendants have been unjustly enriched because of "their misconduct" in "leveraging Plaintiff's note to create additional funds, loans and investments and to realize a substantial profit, and without disclosing the true facts to Plaintiff." *Id.* ¶ 203.

Defendants Bank of America and MERS argue that, if "Plaintiff is attempting to state a claim because the Note was transferred, such a claim must fail. The Note signed by Plaintiff clearly states that 'I understand that the Lender may transfer this Note.'" Defs. BOA & MERS' Mem. at 23 (citing Ex. B). Bank of America and MERS also argue that "it defies reason to assert that Defendants have been enriched, let alone unjustly enriched, as Plaintiff admits she has defaulted on the Loan, and Plaintiff remains the owner of the Property." *Id.*

"Unjust enrichment occurs 'when a person retains a benefit (usually money) which in justice and equity belongs to another.'" *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 151 (D.D.C. 2011) (quoting *Griffith v. Barnes,* 560 F. Supp. 2d 29, 34 (D.D.C. 2008)). The Court finds that the plaintiff has not pled any facts sufficient to establish what benefits have been retained by the defendants that "in justice and equity" belong to the plaintiff. *See id.*

**L.      Twelfth Cause of Action: Intentional Violation of the Duty of Good Faith, Against Bank of America, MERS, Trustee[17]**

The Court now turns to the plaintiff's claim for intentional violation of the duty of good faith. The plaintiff states that "Bank of America had a duty in granting a mortgage to follow guidelines for foreclosure and to adhere to its own underwriting standards." Am. Compl. ¶ 209. The plaintiff also states that "Freedom Mortgage Corp. had a duty to represent its clients' interests," *id.* ¶ 207, and that "MERS had a duty to make the original note available upon request," *id.* ¶ 208. The plaintiff alleges that each defendant violated its respective duty.[18] *Id.* ¶ 213.

Defendant Freedom Mortgage argues that "[the plaintiff] does not allege facts showing (or even suggesting) that Freedom [Mortgage] ever violated the spirit of its contract with her, rendered imperfect performance, or interfered with her performance of the contract." Def. Freedom Mortgage's Mem. at 11. Defendants Bank of America and MERS argue that "(1) Plaintiff admits that defendant Freedom Mortgage Corporation, not BANA, issued the Loan in question and (2) it does not make sense to claim that a mortgage issuer 'had a duty in granting a mortgage to follow guidelines for *foreclosure*.'" Defs. BOA & MERS' Mem. at 24 (quoting

---

[17] The plaintiff does not state explicitly in the Amended Complaint that the twelfth cause of action applies to Freedom Mortgage; however, she alleges within the cause of action that "Freedom Mortgage Corp. had a duty to represent its clients' interests." Am. Compl. ¶ 207.

[18] As noted *supra*, the plaintiff also alleges that "Fannie Mae and Freddie Mac had a duty to adhere to its [sic] own underwriting standards," *id.* ¶ 211, but neither Fannie Mae nor Freddie Mac are named as defendants in the instant case.

23

Am. Compl. ¶ 209).  Bank of America and MERS also argue that "there is no factual support for the bald allegation that 'Plaintiff reasonably relied on the representations of Defendants.'"  *Id.* (quoting Am. Compl. ¶ 214).

"[A]ll contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) (internal quotation marks and citations omitted).  "Under District of Columbia law, this duty entails faithfulness to an agreed common purpose and consistency with the expectations of the other party; it excludes a variety of types of conduct characterized as involving bad faith because they violate standards of decency, fairness or reasonableness."  *Id.* Certainly, the plaintiff is correct that the mortgage contract contained this implied duty of good faith and fair dealing.  The plaintiff has not, however, pled any facts sufficient to support her claims that the defendants did not act in good faith.  Therefore, the plaintiff has not stated a claim for intentional violation of the duty of good faith.

**M.  Thirteenth Cause of Action: Contractual Breach of Good Faith and Fair Dealing, Against Bank of America and Unknown Defendants**

The plaintiff alleges that the defendants breached their contractual duty of good faith and fair dealing by willfully withholding "numerous disclosures," willfully withholding "notices in regard to excessive fees and closing costs," using poor underwriting standards, failing to provide "understandable explanations of additional interest rate fixed product," failing to disclose the dissemination of negative credit scores, losing possession of the Note, willfully giving the plaintiff a loan she could not afford, and representing "that there was active enrollment in the HAMP program to Plaintiff when loss of the underlying note precluded any HAMP modification at all."  Am. Compl. ¶ 221.  Since the plaintiff claims that the defendants' actions were "willful,

knowing, malicious, fraudulent and oppressive," the plaintiff also claims to be entitled to punitive damages on those bases.  *Id.* ¶ 223.

Defendant Freedom Mortgage argues that the plaintiff's allegations arise out of the loan origination process, and therefore "these allegations do not arise out of the performance of contractual agreements between Freedom [Mortgage] and Carter[,]" and should be dismissed. Def. Freedom Mortgage's Mem. at 11.  Defendants Bank of America and MERS argue that "Plaintiff does not allege facts that show the Defendants violated any contract with Plaintiff, let alone any implied contractual obligation of good faith and fair dealing."  Defs. BOA & MERS' Mem. at 24.  Bank of America and MERS argue further that, if the plaintiff contends that the duty of good faith and fair dealing was breached by providing her with a loan she could not afford, this claim must fail because the plaintiff received the contract she bargained for.  *Id.* (citing *Richards v. Option One Mortg. Corp.*, 682 F. Supp. 2d 40, 47-48 (D.D.C. 2010)).

In *Richards*, 682 F. Supp. 2d at 47, the plaintiff alleged that the defendant violated the duty of good faith and fair dealing by providing a loan with monthly payments she could not afford.  The court, however, rejected this claim because "plaintiff qualified for the loan for which she applied - - or, in other words, received the contract she bargained for."  *Id.* at 48.  Moreover, the court found that the plaintiff knew the terms of the loan when she signed the documents, such as the required monthly payments.  *Id.*  Similarly, the Note signed by the plaintiff in the instant case shows the amount of the loan and her monthly payments.  *See* ECF No. 20, Ex. A.  She has not made any allegations that the terms of the loan appearing on that document were different from the terms to which she agreed, and thus, as in *Richards*, she "received the contract she bargained for."  *See id.*  Furthermore, although the plaintiff alleges a litany of wrongs, she has

not pled any facts sufficient to sustain her claim that the defendants' performance under the contract violated the duty of good faith and fair dealing.[19]

### N.   Fourteenth Cause of Action: Wrongful Foreclosure, Against Bank of America and MERS

Turning to the plaintiff's claim for "wrongful foreclosure," the plaintiff alleges that defendant Bank of America "failed to adhere to Power of Sale Notice Requirements," Am. Compl. ¶ 226, "did not record the security interest in the mortgage note," *id.* ¶ 228, "failed to follow Federal loan modification guidelines," *id.* ¶ 230, "failed to submit the statutorily required notice [of foreclosure] to Plaintiff's address," *id.* ¶ 234, and "represented to Plaintiff that there would be no sale of her home in a foreclosure sale through its telephone representatives, leading Plaintiff to believe that she did not need to retain counsel to keep her home," *id.* ¶ 235. Additionally, the plaintiff alleges generally that "[t]here was fraud in the notarization, making all assignments of the mortgage null and void." *Id.* ¶ 231.  The plaintiff also claims that "[a]s a result of the invalid assignment of the mortgage, Defendant MERS did not have standing to foreclose." *Id.* ¶ 232.

Defendants Bank of America and MERS simply say that "[f]or the reasons stated in [response to the claims in the Ninth Cause of Action] herein, this claim should be dismissed." Defs. BOA & MERS' Mem. at 24.

While this claim is not identical to the claims made in Count 9, the Court agrees with the defendants that this claim must fail for the same reasons.  As noted *supra*, the plaintiff has provided no factual allegations to support her assertions that the foreclosure was wrongful, or that a foreclosure even took place.  Furthermore, she has provided no citation to what foreclosure

---

[19] Indeed, the only tangible injury she alleges is that "Plaintiff have [sic] incurred and continue to incur legal fees, including attorney fees and costs[.]"  *See* Am. Compl. ¶ 222.

statutes were allegedly violated by the defendants, nor has she specified what actions by the defendants constituted these violations.  Accordingly, she has failed to state a claim.

      **O.**      **Fifteenth Cause of Action: Abuse of Process and Malicious Prosecution, Against Bank of America**

      The Court next considers the plaintiff's abuse of process and malicious prosecution claim.  In this cause of action, the plaintiff alleges that "Defendant Bierman Geesing used robo-signers to forge legal documents in pursuit of the wrongful foreclosure and sale of Plaintiff's real property."  Am. Compl. ¶ 238.[20]  The plaintiff also claims that Bank of America informed her that she was being reviewed for enrollment in the HAMP program, but that foreclosure proceedings were initiated prior to completion of the review by a HAMP negotiator.  *Id.* ¶ 240.  The plaintiff alleges further that Bank of America lacks a "communication mechanism between HAMP negotiators and the REO departments," and that this constitutes abuse of process.  *Id.* ¶ 242.

      Defendants Bank of America and MERS argue that "Plaintiff fails to allege, or even suggest, any facts that would be sufficient to state a claim for abuse of process or malicious prosecution but instead realleges her grievances with regards to the loan modification review process."  Defs. BOA & MERS' Mem. at 25.

      In the District of Columbia:

> abuse of process occurs when process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.  There are two essential elements to an abuse of process claim: (1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge.

---

[20] As noted, *see supra* n.1, Bierman, Geesing, Ward & Wood, LLC is not named as a defendant in this case.

*Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (emphasis in original) (internal quotation marks and citations omitted).  The plaintiff has not alleged facts to support either element of an abuse of process claim.  However, even giving the plaintiff the benefit of the doubt that she has alleged an ulterior motive, "[t]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant."  *Scott v. District of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996) (quoting RESTATEMENT (SECOND) OF TORTS § 682 cmt. b (1977)).  Therefore, it would seem that even if there were an ulterior motive, which the plaintiff has not sufficiently alleged, the plaintiff does not allege that the foreclosure process was used for anything other than a foreclosure, and thus the plaintiff has not alleged any ulterior purpose.  Her complaint thus fails to state a claim of abuse of process.

To the extent that the plaintiff also attempts to claim malicious prosecution, this claim is utterly unavailing.  In the District of Columbia, "a plaintiff must plead and prove four things: (1) the underlying suit terminated in plaintiff's favor; (2) malice on the part of defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action."  *Feld Entm't, Inc. v. ASPCA*, No. 07-1532, 2012 U.S. Dist. LEXIS 93863, at *99 (D.D.C. July 9, 2012) (citation and internal quotation marks omitted).  The plaintiff has not alleged any factual allegations to suggest "malicious prosecution" by Bank of America, and has thus failed to state a claim.

## P.        Sixteenth Cause of Action: Predatory Lending, Against Bank of America

The Court next turns to the plaintiff's assertion that the loan was "underwritten without due diligence," and that no effort was made to verify the plaintiff's income or ability to repay the loan.  Am. Compl. ¶ 256.  She also asserts that the loan "was designed to create a transaction

whereby equity is removed from the home through an expensive refinance, it delivers no net tangible benefit to the Borrower, it consolidated short term debt into long term debt, created a 30 year amortization whereby payments are not reducing principal significantly, and was utilizing high interest rates," which resulted in "equity stripping." *Id.* ¶ 253.

Defendants Bank of America and MERS argue first, that the District of Columbia does not recognize a common law cause of action for "predatory lending," and that second, Bank of America did not originate the loan and therefore "cannot be liable for purported predatory lending practices based on the origination of this Loan." Defs. BOA & MERS' Mem. at 25.

The Court is unable to determine from the Amended Complaint whether the plaintiff intends this cause of action to be brought under common law, District of Columbia statute, or federal statute. Further, the Court agrees that, whatever the source of law for this claim, because the plaintiff's allegations revolve around the origination of the loan, this claim cannot be sustained against Bank of America, which did not originate the loan. *See* Am. Compl. ¶ 76 (noting that plaintiff obtained her first mortgage loan through a "consumer credit transaction with Freedom Mortgage Corp.," not Bank of America).

Q.    **Seventeenth Cause of Action: Violations of Truth in Lending Act, Against Bank of America, Freddie Mac, and Freedom Mortgage**[21]

Moving on to the plaintiff's seventeenth cause of action, the plaintiff alleges that, "[i]n violation of the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, Bank of America extended credit to Ms. Carter without regard to the consumer's repayment ability as of the time of the loan consummation." *Id.* ¶ 259. She also alleges that Bank of America failed to provide a required "Notice of Right to Cancel." *Id.* ¶ 265. She further alleges that "Freedom Mortgage Corp. overstated the assets, income, collateral, or other financial information in order to qualify

---

[21] As previously noted, *supra* note 4, Freddie Mac is not a defendant in this case.

Ms. Carter for the mortgage," *id.* ¶ 263, and that "Freedom Mortgage Corp. failed to disclose certain finance charges on the HUD-1 statement that were to be imposed as a part of the extension of credit . . . and/or failed to explain how those charges were to be determined[,]" *id.* ¶ 269.  Lastly, she alleges that "[n]either Bank of America nor Freedom Mortgage disclosed the payments made to Bank of America for its pre-selling and holding the mortgage for Premiere Financial Funding."[22]  *Id.* ¶ 270.

Defendant Freedom Mortgage argues that "[n]owhere in the allegations supporting Count Seventeen does Carter identify a specific disclosure required under TILA . . . or its implementing regulation, . . . which Freedom [Mortgage] either failed to make or somehow made inaccurately. The threadbare allegations that Freedom [Mortgage] overstated assets or income or 'failed to disclose certain finance charges' simply do not suffice to state a claim for a TILA violation." Def. Freedom Mortgage's Mem. at 11 (quoting Am. Compl. ¶ 263).  Defendants Bank of America and MERS argue similarly that "Plaintiff fails to identify a specific disclosure required under TILA[.]"  Defs. BOA & MERS' Mem. at 26.  Additionally, Bank of America and MERS argue that the plaintiff's TILA claims are time-barred because they must be brought within one year from the date of violation to recover damages, or within three years to rescind the loan, but the plaintiff waited more than six years.  *Id.*

In passing the Truth in Lending Act, "Congress sought to ensure the accurate and meaningful disclosure of material terms to consumers in credit transactions." *Thompson v. HSBC Bank USA, N.A.*, No. 10-2075, 2012 WL 1003514, at *6 (D.D.C. Mar. 27, 2012) (citations omitted).  To state a claim under TILA, the "plaintiff must show either that she did not receive the required disclosures or that the disclosures provided were not clear and conspicuous."

---

[22] As this is the only mention of "Premiere Financial Funding" in the Amended Complaint, the Court assumes this to be another example of carelessness in drafting the plaintiff's Amended Complaint.

*Thompson*, 2012 WL 1003514, at *6 (citations omitted).  The only concrete violation of TILA

that the plaintiff has alleged is that "Bank of America did not provide a Notice of Right to

Cancel."  *See* Am. Compl. ¶ 265; *see also Wiggins v. AVCO Fin. Servs.*, 62 F. Supp. 2d 90, 94-

95 (D.D.C. 1999) (discussing the TILA requirement of notice of right to cancel).  Putting aside

the fact that, as the institution issuing the loan, Freedom Mortgage would have been responsible

for providing this notice, not Bank of America, the Supreme Court has instructed that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Absent more specific factual allegations, the

plaintiff's complaint is insufficient to state a TILA claim.  Moreover, as in *Thompson*, "even

assuming that [the defendants] failed to make required disclosures, [the plaintiff] was required to

bring her TILA claim, at the latest, within three years after the consummation of the loan

agreement[,]" which would have been August 16, 2007.  *See Thompson*, 2012 WL 1003514, at

*7.

### R.  Eighteenth Cause of Action: Violations of the Real Estate and Settlement Procedures Act, Against Bank of America

The Court now turns to the plaintiff's claims for violations of the Real Estate Settlement

Procedures Act ("RESPA").  The plaintiff alleges that "Bank of America failed to inform

Plaintiff of [its] intention to transfer the servicing of the loan and failed to inform Plaintiff of the

actual transfer within fifteen days before the effective date of the transfer as required by the Real

Estate and Settlement Procedures Act."  Am. Compl. ¶ 277 (citing 12 U.S.C. § 2605(b)(2)(A)).

The plaintiff also alleges that Bank of America "gave a fee for the referral of settlement

business," *id.* ¶ 280, "charged fees in excess of the reasonable value of goods provided," *id.* ¶

281, and "imposed the use of a particular service provider," *id.* ¶ 282.  Plaintiff states that

"[d]amages are rescission of contract."  *Id.* ¶ 284.  Plaintiff also alleges that Bank of America

"failed to provide the Special Information Booklet explaining the settlement costs within three business days after consumer submitted the loan application." *Id.* ¶ 278 (citing 12 U.S.C. § 2604(c)).

Defendants Bank of America and MERS respond to the plaintiff's claims in three ways. First, they argue that under 12 U.S.C. § 2604, there is no private right of action. Defs. BOA & MERS' Mem. at 27. Second, they argue that "to the extent that Plaintiff's RESPA claims are based on section 2605, 2607, any such claim is barred by RESPA's statute of limitations in 12 U.S.C. § 2614" because the plaintiff waited "more than six years from the date this cause of action allegedly accrued to file this Complaint." *Id.* (citing *Winstead v. EMC Mortg. Corp.*, 621 F. Supp. 2d 1, 4 (D.D.C. 2009)). Lastly, Bank of America and MERS argue that "[a]s none of [the] Defendants was involved in the settlement of the loan, none of them can have liability for any settlement-based claims." *Id.*

As a threshold matter, defendants Bank of America and MERS are correct that there is no private right of action under 12 U.S.C. § 2604. *See Bamba v. Res. Bank*, 568 F. Supp. 2d 32, 34-35 (D.D.C. 2008) ("[T]his provision [§ 2604(c)] does not provide for a private right of action . . . ."); *see also Dalton v. Countrywide Home Loans, Inc.*, 828 F. Supp. 2d 1242, 1250 (D. Colo. 2011) ("[T]here is no private cause of action for violations of RESPA §§ 2603 & 2604 . . . ."); *Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 895 (D. Haw. 2011) ("It is well-established . . . that there is no private cause of action for violations of 12 U.S.C. §§ 2603 or 2604."); *Agbabiaka v. HSBC Bank USA Nat. Ass'n*, No. C 09-05583, 2010 WL 1609974, at *4 (N.D. Cal. Apr. 20, 2010) ("There is no private right of action under RESPA for violations of Sections 2603 and 2604."). Thus, to the extent that the plaintiff attempts to argue that defendant Bank of America violated section 2604, the plaintiff's claims are unavailing.

Turning to the plaintiff's claims under 12 U.S.C. § 2605(b), this provision "requires the transferor of a loan to provide notice to the borrower at least fifteen days before the transfer takes place." *Antoine v. U.S. Bank Nat. Ass'n*, 821 F. Supp. 2d 1, 5 (D.D.C. 2010).  Although the plaintiff alleges that Bank of America failed to provide this required notice, she offers no facts supporting this allegation, nor does she even provide an approximate date when loan servicing was transferred.  Therefore, she has not alleged sufficient detail to sustain her claim that this provision was violated.

As noted, the plaintiff has also alleged that Bank of America "gave a fee for the referral of settlement business."  Am. Compl. ¶ 280.  Though the plaintiff does not elaborate on this allegation, this would appear to be a claim for an alleged violation of 12 U.S.C. § 2607(a), which states that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  The Court agrees that, as Bank of America did not issue the loan, it cannot be liable for claims about referrals for settlement.

Additionally, "[a] cause of action under § 2607 accrues on the date of the closing," and the statute of limitations is one year.  *Palmer v. Homecomings Fin., LLC*, 677 F. Supp. 2d 233, 237 (D.D.C. 2010).  Therefore, any claim under section 2607 would also be time-barred.

**S.      Nineteenth Cause of Action: Conspiracy to Commit Mortgage Fraud, Against Bank of America and First Home Mortgage Corp**[23]

The plaintiff alleges that "Freedom Mortgage Corp. conspired with Bank of America to carry out the acts described in Counts 10 through 13."  Am Compl. ¶ 286.  She states that she

---

[23] First Home Mortgage Corp. is not a defendant in this case.  Since the plaintiff's discussion of this cause of action makes reference to both First Home Mortgage Corp., *see id.* ¶ 289, and Freedom Mortgage, *see id.* ¶¶ 286, 288, the Court assumes for the purposes of these Motions to Dismiss that this cause of action is meant to be against Bank of America and Freedom Mortgage.

"was injured by the conspiracy in that she was denied the opportunity to find cheaper credit, that she was sold and made payments under a predatory loan, and that such fraud and predatory lending practices were the proximate cause of her foreclosure." *Id.* ¶ 290.

The defendants argue that the plaintiff has not sufficiently pled the elements of civil conspiracy as set out, for example, in *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. Cir. 2000). *See* Def. Freedom Mortgage's Mem. at 12; Defs. BOA & MERS' Mem. at 28.  The defendants argue that, because the plaintiff has failed to state a claim for common law mortgage fraud, her claim for conspiracy to commit fraud must automatically fail.  *See* Def. Freedom Mortgage's Mem. at 12; Defs. BOA & MERS' Mem. at 28.

Under District of Columbia law, a conspiracy consists of "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." *Paul*, 754 A.2d at 310.  The defendants are correct that "conspiracy is not an independent tort but only 'a means for establishing vicarious liability for [an] underlying tort.'" *D.C. Oil, Inc. v. ExxonMobil Oil Corp.*, 746 F. Supp. 2d 152, 158 (D.D.C. 2010) (quoting *Paul*, 754 A.2d at 310 n.27).  Since the plaintiff has failed to state a claim for common law fraud, as discussed *supra*, her claim for conspiracy to commit fraud cannot stand alone and is thus also unavailing.

**T.      Twentieth Cause of Action: Civil Racketeer Influenced and Corrupt Organization (RICO), Civil Conspiracy to Commit Mail Fraud, and Civil Conspiracy to Commit Wire Fraud, Against Bank of America**

The plaintiff alleges that Bank of America's "pattern of activities resulted in the loss of Plaintiff's home and the financial damages she suffered from her predatory loan." Am. Compl. ¶ 294.  She alleges that this cause of action is supported by the fact that, in pursuit of the allegedly

illegal acts previously described, "Defendant Bank of America used the interstate mail and wire system to communicate with Plaintiff." *Id.* ¶¶ 295-96.

Defendants Bank of America and MERS argue in response that the plaintiff has not pled factual allegations sufficient to prove the elements of a civil RICO claim.  Defs. BOA & MERS' Mem. at 28.  Bank of America and MERS also argue that the alleged violations must be the proximate cause of the plaintiff's injury, but "Plaintiff does not provide what proximate damages she has suffered."  *Id.* at 28-29.

"To establish a RICO violation, the plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Busby*, 772 F. Supp. 2d at 281 (quoting *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001)).  In the instant cause of action, the plaintiff has not even stated what section of the RICO statute Bank of America has allegedly violated, much less the required elements of the cause of action. Moreover, "[i]t is well established that a single scheme . . . designed to frustrate one transaction and inflict[ ] a single, discrete injury on a small number of victims . . . fails to meet RICO's requirement of a pattern of racketeering activity."  *Id.* at 282 (internal quotation marks and citations omitted).  Plaintiff has not managed to establish a single scheme designed to frustrate her ability to modify the terms of her loan, much less a pattern of racketeering activity.  Thus, she has failed to state a claim.

### U.    Twenty-First Cause of Action: Failure to Comply With State Statutes, Against All Defendants

Finally, the Court turns to the plaintiff's final claim that the defendants failed to comply with state statutes.  Under this count, the plaintiff includes three primary allegations.  First, the plaintiff alleges that "Defendants failed to comply with District of Columbia foreclosure laws because Defendant is attempting to enforce a claim based on a Security Deed, or an Assignment

that was not properly or timely filed, or correctly executed, and a Promissory Note which they cannot prove exists." Am. Compl. ¶ 302.  Second, the plaintiff alleges a violation of the Consumer Protection Procedures Act because "Defendant Bank of America represented that Plaintiff had a status of someone who can request a postponement of the foreclosure sale of her home which she obviously did not have as the foreclosure sale went forward regardless of her attempts to postpone it."  *Id.* ¶ 311.  Third, the plaintiff alleges that Bank of America is in violation of the Consumer Protection Procedures Act because "by sending Plaintiff a letter with contact phone numbers, Bank of America was representing that the information gathered by calling that number and speaking to a Bank of America representative would be accurate.  It was not."  *Id.* ¶ 312 (citing D.C. CODE 28-3904(e)).

Defendant Freedom Mortgage argues in response that, "[l]ike several prior Counts, Count Twenty-One is based on the alleged failure to comply with the statutory requirements for a foreclosure that did not involve Freedom [Mortgage].  Again, Carter alleges no conduct by Freedom [Mortgage] that post-dates the August 16, 2004 Loan closing other than its sale of the Loan to Bank of America."  Def. Freedom Mortgage's Mem. at 12 (citations omitted). Defendants Bank of America and MERS argue that "[t]his claim is based on the alleged failure to comply with the statutory requirements for a foreclosure that did not occur.  Even if a foreclosure had occurred, there is no allegation that the terms of the Deed of Trust, D.C. CODE ANN. § 42-801, *et seq.* or D.C. MUN. REGS. tit. 9 § 3100 were not followed."  Defs. BOA & MERS' Mem. at 29 (citations omitted).

The Court first addresses the plaintiff's claim under the Consumer Protection Procedures Act, which is a "comprehensive statute designed to provide procedures and remedies for a broad spectrum of practices which injure consumers."  *Findlay v. Citimortgage, Inc.*, 813 F. Supp. 2d

108, 121 (D.D.C. 2011) (quoting *Atwater v. District of Columbia Dep't of Consumer & Reg.*

*Affairs,* 566 A.2d 462, 465 (D.C. 1989)).  The specific violation the plaintiff alleges is that Bank

of America "misrepresent[ed] as to a material fact which has a tendency to mislead" in violation

of D.C. Code § 28-3904(e).  The plaintiff has not, however, pled any facts beyond the bare

allegation that Bank of America misled her that are sufficient to sustain such a claim.

The plaintiff's other claims of wrongful foreclosure in violation of D.C. statutes in this

count are duplicative of other claims that have been discussed, *supra*, in Counts Nine and

Fourteen.  The plaintiff thus does not state a claim for which relief can be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Motions to Dismiss from defendant Freedom Mortgage,

ECF No. 18, and defendants Bank of America and MERS, ECF No. 20, are GRANTED.[24]  An

Order consistent with this Memorandum Opinion will be issued.

**DATED: August 8, 2012**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge

---

[24] At the time that the plaintiff sought an extension of time to file an untimely Opposition to the Motions to Dismiss, she also filed a "Motion to Show Cause" and extend time to file a response.  That motion, ECF No. 23, will be denied as moot, as it is duplicative of the plaintiff's motions for extensions of time, ECF Nos. 24-25, which the court granted.